1  Greg L. Lippetz (State Bar No. 154228)
glippetz@jonesday.com
2  JONES DAY
1755 Embarcadero Road
3  Palo Alto, CA 94303
Telephone:    650-739-3939
4  Facsimile:    650-739-3900

5  Attorneys for Defendant NOKIA, INC.

David N. Kuhn (State Bar No. 73389)
dnkuhn@pacbell.net
144 Hagar Avenue
Piedmont, CA 94611
Telephone:    510-653-4983

Attorney for Plaintiff GREGORY BENDER

6

7

8                   UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11

12  Gregory Bender,                        Case No. C 09-01247 MMC (MEJ)

13                Plaintiff,               **DISCOVERY LETTER**

14       v.
                                           **MAGISTRATE JUDGE**
15  Nokia Inc.,                            **MARIA-ELENA JAMES**

16                Defendant.

17

18

19
        Defendant Nokia, Inc. ("Nokia") seeks an order from the Court striking Plaintiff Gregory
20
Bender's ("Bender") infringement contentions, or alternatively limiting their scope and
21
compelling Bender to amend the contentions to provide the specificity required by Patent L.R. 3-
22
1.  The parties have met and conferred in person according to Civil L. R. 37-1(a) and the Court's
23
standing orders.  No resolution has been reached and the parties now seek guidance from the
24
Court.
25

26

27

28
                                                          DISCOVERY LETTER
                                                          CASE NO. 09-01247-MMC (MEJ)

### NOKIA'S POSITION

On January 8, 2010, Bender served his Patent L.R. 3-1 infringement contentions on Nokia, which are attached as Exhibit A. Bender's contentions fail to comply with Patent L.R. 3-1 for at least two reasons: 1) the charts do not identify the location of each element of each asserted claim in each accused product, and 2) they fail to specifically identify and provide claim charts for each accused product. These contentions are similar in form and specificity to the contentions filed in every other Bender case thus far. This Court is already familiar with this issue as you have recently instructed Bender to amend his infringement contentions with respect to Freescale. *See Bender v. Freescale Semiconductor, Inc.*, No. C 09-1156 PJH (MEJ) (N.D. Cal. Apr. 26, 2010) D.I. 70. Several others have also informed Bender that the level of specificity in contentions such as those provided to Nokia are insufficient. *See Bender v. IBM*, Case No. C 09-01249 RMW (RS), 2009 U.S. Dist. LEXIS 126510 (N.D. Cal. Nov. 13, 2009); *Bender v. Intersil Corp.*, No. C09-1155 CW (BZ), 2009 U.S. Dist. LEXIS 126515 (N.D. Cal. Oct. 29, 2009); *Bender v. Advanced Micro Devices, Inc.*, No. C-09-01149-MMC (EMC), 2010 U.S. Dist. LEXIS 11539 (N.D. Cal. Feb. 1, 2010); *Bender v. Micrel, Inc.*, No. C 09-01144 SI, 2010 WL 520513 (N.D. Cal. Feb. 6, 2010); *Bender v. Maxim Integrated Prods., Inc.*, No. C 09-01152 SI, 2010 U.S. Dist. LEXIS 32115 (N.D. Cal. Mar. 22, 2010); *Bender v. Infineon Techs. N. Am. Corp.*, No. C09-02112 JW (HRL), 2010 U.S. Dist. LEXIS 24096 (N.D. Cal. Mar. 16, 2010); *Bender v. Broadcom Corp.*, No. C 09-01147 MHP, 2010 U.S. Dist. LEXIS 28336 (N.D. Cal. Mar. 23, 2010); and *Bender v. Advanced Micro Devices, Inc.*, No. C-09-1149-MMC (EMC) (N.D. Cal. Apr. 22, 2010) D.I. 56.

Bender's amended charts violate Patent L.R. 3-1 because they fail to "identify[] specifically where each limitation of each asserted claim is found within each Accused [product]." Patent L.R. 3-1(c). Infringement contentions must provide the accused infringer with more than just the language of the patent. *Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-2079-VRW, 2002 U.S. Dist. LEXIS 26098, at *18 (N.D. Cal. Aug. 13, 2002). Rather, they must specify where in the product each limitation is located. *Renesas Tech. Corp. v. Nanya Tech. Corp.*, Case No. C03-05709 JF (HRL), 2004 U.S. Dist. LEXIS 23601, at *17 (N.D. Cal. Nov. 10, 2004). They must also explain how each limitation is met by the product, and must compare the product on an element by element basis to the asserted claims. *InterTrust Techs. Corp. v. Microsoft Corp.*, No. C 01-1640 SBA, 2003 U.S. Dist. LEXIS 22736, at *7 (N.D. Cal. Nov. 26, 2003) (citing *Network*). The *Intertrust* court made it clear that, "[a]t the Patent Local *Rule 3-1* Disclosure stage, a plaintiff must put forth information so specific that either reverse engineering or its equivalent is required." *Id.* at *7; *see Network*, at *12-13 (finding contentions insufficient when based solely on marketing collateral and whitepapers). The courts have made clear that a patent plaintiff's obligations under Patent L.R. 3-1 are an extension of plaintiff's Rule 11 obligation to perform an adequate prefiling analysis. *InterTrust*, at *7; *Network*, at *12. In hardware cases, Rule 11 typically requires reverse engineering or its equivalent even before the complaint is filed, well before a plaintiff's Patent L.R. 3-1 disclosures are due. *See Network*, at *15. This Court and others have already instructed Bender that reverse engineering or its equivalent is required. *See, e.g.*, *Bender v. Freescale Semiconductor,* at 6; *Bender v. AMD*, (Apr. 22, 2010 order) at 2; *Bender v. Maxim*, at *6-7.

For each element of each asserted claim, Bender's infringement contentions merely speculate that structures corresponding to each claim limitation are located somewhere within the products. Such contentions fall woefully short of the level of specificity required by Patent L.R. 3-1(c). Bender has been informed multiple times that this approach is insufficient. The courts in Bender's cases against *Micrel*, *AMD*, *IBM*, *Freescale, Infineon, Broadcom, Maxim* and *Intersil* have all required similar contentions to be substantively amended. *See* case list *supra*. To comply with the Patent L.R. 3-1(c) requirements in the present case—where the patent elements are described in schematic-level detail— Bender must similarly provide schematic-level details in his contentions.

Bender's contentions demonstrate a general failure to perform a diligent and sufficient investigation into his claims. The rules requiring a plaintiff to perform significant early due diligence exist to prevent a "windfall for plaintiffs . . . who file ill-advised and poorly researched actions hoping to extract nuisance settlements before the myriad defects in their allegations can be fully explored." *Micromesh Tech. Corp. v. Am. Recreation Prods., Inc.*, No. C-06-6030 MHP, 2007 U.S. Dist. LEXIS 64241, at \*21 (N.D. Cal. Aug. 29, 2007). Bender has been warned twice prior to serving his contentions on Nokia, and seven times since, that contentions similar to the Nokia contentions are not sufficient. However, Bender ignored the admonitions of the *Intersil* and *IBM* courts, and instead served substantially the same contentions on Nokia. Not only did Bender know that more was required, but he also knew that more information was available through reverse engineering or its equivalent. As Judge Alsup noted early on in the *Exar* matter, Bender "should have hired legions of people to go out and reverse engineer these things." (*Bender v. Freescale*, D.I. 29-8, 15:12-13.) However, Bender has not even acquired any Nokia products to examine, let alone reverse engineered them. Instead, Bender expects to skip his obligations and to force Nokia to expend its money to produce confidential schematics before complying with his obligations under the Patent Local Rules.

Given Bender's preexisting knowledge of the required level of detail he has no viable excuse for failing to provide properly detailed infringement contentions to Nokia. Bender's position is that, because Nokia has not provided its confidential schematics, he cannot comply with Patent L.R. 3-1. However, Bender's position would read a new exception into Patent L.R. 3-1(c) which instead requires plaintiff to "crystallize [its] theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *InterTrust*, at \*4, *see also Network*, at \*18; *Renesas*, at \*17. The courts in the other Bender matters have already rejected this position. *See, e.g.*, *Bender v. Micrel*, at \*2; *Bender v. Infineon*, at \*5-6; *Bender v. Maxim*, at \*6-7.

Bender has also failed to identify and provide infringement contentions for each accused product contrary to the requirement of Patent L.R. 3-1(b). Bender provided infringement contention charts for only one product, but contends that his contentions cover any and all Nokia products that may make use of voltage-feedback amplifiers or current feedback amplifiers. Prior to serving his contentions, Bender had already been informed in his other cases that such broad unsupported allegations regarding the identity of accused products are not acceptable. Because Bender has failed to provide any infringement contentions, much less contentions that comply with Patent L.R. 3-1, for any products other than the single charted product, if Bender is allowed to amend, he should now be limited to only that product specifically charted. *See Bender v. Freescale*, at 7.

Bender's failure to provide proper infringement contentions has severely prejudiced Nokia's ability to defend itself against Bender's unfounded accusations. *See, e.g.*, *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005). Nokia's products are cellular telephones comprised of a number of complex semiconductor chips. Bender's contentions identify neither the chips that contain the patented circuitry, nor where within such chips the patented circuitry can be found. Without Court intervention, Nokia will be forced to conduct a wide-ranging investigation into which of its chip suppliers provide chips with amplifiers, then try to ascertain where within such chips an amplifier circuit exists, all for chips that Nokia does not even manufacture. Nokia will be forced to conduct this investigation as to hundreds, if not thousands of vaguely accused products. Bender has also attempted to reserve an ability to assert his "real" contentions later in the case, restricting Nokia's ability to develop its defenses and to obtain evidence until after discovery and claim construction is either closed or substantially complete. Bender has also failed to identify the structure, act, or material in the accused product associated with the means-plus-function elements in the asserted claims, which radically affects claim construction and Nokia's search for prior art to submit with its Patent L.R. 3-3 and 3-4 disclosures. As a result, Nokia is unable to adequately prepare its defenses in this case.

Bender has knowingly served and maintained insufficient infringement contentions against Nokia, despite an overwhelming indication from every court that has addressed this issue that such

contentions are inappropriate.  Instead of performing a pre-suit analysis that would allow him to provide proper contentions, Bender instead has attempted to play the courts off one another in an attempt to find a court that will grant him leniency to move forward with such blatantly deficient contentions.  Such attempts at legal arbitrage should not be allowed.  Several other courts have already warned Bender that continued failure under the Patent Local Rules would lead to having his contentions struck.  *See, e.g.*, *Bender v. Micrel*, at *3, *Bender v. AMD*, (Feb. 1, 2020 order) at *5, *Bender v. Infineon*, at *6 and *Bender v. Freescale*, at 7.  Given Bender's continued recalcitrance with respect to the Patent Local Rules, the Court should now strike his contentions and dismiss this matter.  Should any contentions survive, Bender should be restricted to the specific product he has charted in his contentions, and should be compelled to provide more specific claim charts for that product.

### BENDER'S POSITION

Patent L.R. 3-1(b) requires the identification of an "Accused Instrumentality." Such identification is to be "as specific as possible." The subject Infringement Contentions and Claim Charts identify the "Accused Instrumentality" as the Nokia 6205 cell phone, representing Nokia cell phones. The Claim Charts, based upon publicly available information, indicate what the elements of the asserted claims are and where the elements are in the subject Nokia products (i.e., in the amplifiers in the identified modules that comprise the cell phones). The business of Nokia is cell phones and Nokia is conversant with its own products. As stated in its Form 20-F for fiscal 2008, Nokia discontinued its own "chipset development" in 2007 and "operate[s] a multi-sourcing model for [its] chipsets, working with five chipset suppliers: Broadcom, Infineon Technologies, Qualcomm, ST-Ericsson, and Texas Instruments" (according to the 2009 Form 20-F, Texas Instruments has been dropped from the mix); in other words, Nokia still designs the chipsets it uses in its cell phones and it knows the components. Nokia also states that it licenses its "modem" technology to such suppliers; its "modem" technology is that which is used in Nokia cell phones. Nokia cell phones are assembled outside of the United States so that the act of importation by Nokia is the infringing act.

Infringement contentions are intended, inter alia, to put the defendant on notice as to where, how, and why the accused products allegedly infringe by utilizing the elements of the asserted claims. As Chief Judge Walker discussed and determined in Network Caching Tech., LLC v. Novell, Inc., 2003 WL 21699799 (N.D. Cal. 2003) (the "Network Caching II case"):

… Patent LR 3-1 does not require … evidence of infringement or … ironclad and irrefutable claim constructions. Rather, Patent LR 3-1 is "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed."[Citation omitted]. Whether those theories may ultimately be vindicated through claim construction and at trial is an entirely separate matter from whether Patent LR 3-1 has been satisfied. **At this juncture, a party may comply with Patent LR 3-1 by setting forth particular theories of infringement with sufficient specificity to provide defendants' with notice of infringement <u>beyond</u> that which is provided by the mere language of the patents themselves.** See 8/13/02 Order (Doc # 227) ("**Patent LR 3-1 * * * takes the place of a series of interrogatories that defendants would likely have propounded had the patent local rules not provided for streamlined discovery.**").

… **PICs are not meant to provide a forum for litigation of the substantive issues;**

**they are merely designed to streamline the discovery process.** [Emphasis added.]

Fusionarc, Inc. v. Solidus Networks, Inc., 2007 U S. Dist. LEXIS 28970 (N.D.Cal.) followed the Network Caching II case. Judge Seeborg noted that the subject infringement contentions identified the accused hardware and software "only in broad terms, and **in some instances … expressly state[d] that discovery from Solidus or third parties will be necessary … to determine how (or even if) there is infringement.**" Judge Seeborg observed that Patent L.R. 3-1 was intended to streamline discovery by supplanting the "series of interrogatories that defendants would likely have propounded in

its absence" and held that the infringement contentions were adequate because the plaintiff had "adequately established it had provided all the information in its possession as to how and why it believed [there was infringement]" and the plaintiff had disclosed "to the extent of its present knowledge, where it believes the infringement lies." See, also, STMicroelectronics, Inc. v. Motorola, Inc., 308 F.Supp.2d 754 (E.D.Tex. 2004) (following Network Caching as to requiring "only to set forth specific theories of infringement") and American Video Graphics, L.P. v. Electronics Arts, Inc., 359 F. Supp. 2d 558 (E.D. Tex. 2005) (infringement contentions are sufficient where defendant's sole possession of information the plaintiff needs precludes greater specificity).

   The infringement contentions and claim charts are intended to crystallize the theories of infringement. As shown in the subject infringement contentions and claim charts, the theories of infringement are simple and straightforward; Nokia utilizes each and every element of Claim 8 of the '188 patent and/or each and every element of Claim 35 of the '188 patent in the amplifiers contained in the modules in its cell phones.

   Mr. Bender, years ahead of the industry, invented and patented what are now known in the analog electronics industry as high-gain current feedback amplifiers (claim 8) and voltage feedback amplifiers built utilizing current feedback techniques (claim 35); the latter, known also in the industry as voltage feedback amplifiers, rendered the prior art of the differential pair (which is disclaimed in the '188 patent) as technologically obsolete because the voltage feedback amplifier Mr. Bender invented is ten times faster and a hundred times more stable than the differential pair. The subject amplifiers are used, inter alia, in analog to digital converters, digital to analog converters, and phase locked loops. Such modules are identified in the Nokia products. Nokia has notice. It should be noted for the record that the claims of the '188 patent are not "means plus function" claims.

   Nokia essentially insists that the subject claim charts are required to contain the level of detail that can only be obtained through reverse engineering, because the only other way would be to have access to the schematics possessed only by Nokia and its licensees. Reverse engineering is exceedingly expensive, running in the millions of dollars depending on circuitry complexity, and does not even necessarily work on more complex "systems on a chip." Mr. Bender is a working man, not a rich man. If reverse engineering were required, the Court would be closing the halls of justice to all but the most monied of corporate interests, raising a serious issue of substantive due process. Moreover, if a plaintiff were required to reverse engineer accused integrated circuit products, which at best would yield essentially the same result as obtaining the schematics, there would be no point to the requirement under Patent L.R. 3-4(a) that, as part of the Invalidity Contentions, the defendant produce "schematics," for the plaintiff, in theory, would no longer need them. The Federal Circuit has held that reverse engineering is not required. See, for example, Q-Pharma, Inc. v. Andrew Jergens Company, 360 F. 3d 1295(Fed. Cir. 2004) (in Q-Pharma, the plaintiff did not "conduct a chemical analysis" of the accused product (the equivalent of reverse engineering) but, instead relied upon advertising and labeling statements describing the qualities and characteristics of the accused product) and Intamin, Ltd. v. Magnetar Technologies Corp., 483 F.3d 1328 (Fed. Cir. 2007) (review of publicly available information, including with experts). Judge Walker held in the Network Caching II case that reverse engineering, per se, is not required and that its "equivalent" can be based upon the use of white papers and marketing documents. The Nokia portion of this letter misleads this Court by citing to an earlier Network Caching case ruling for finding contentions are insufficient when "based solely on marketing collateral and white papers" and **not citing** the subsequent definitive Network Caching II decision which reaches the exact opposite conclusion. In the recent case of Micromesh Technology Corporation v. American Recreation Products, Inc., 2007 U.S. Dist. LEXIS 64241 (N.D. Cal.2007), Judge Patel reached the same conclusion, that "… there is no requirement a patentee must reverse engineer the allegedly infringing product to avoid a Rule 11 violation" (citing Q-Pharma, Inc., supra). Jones Day, which represents Nokia, first made a motion to compel further infringement contentions in the Intersil case based exclusively on the premise that Mr. Bender was required to provide in the infringement contentions the results of "reverse engineering" as to the accused products. In the Intersil discovery dispute telephone conference call with Magistrate Judge

Zimmerman, he specifically said that he knew of no "black letter" requirement that a plaintiff must reverse engineer. He did state that the claim charts "look[ed] a little thin" and counsel for Mr. Bender agreed to supplement them and did so. Intersil has since been settled through mediation. Jones Day also made motions to compel based upon mandatory reverse engineering for additional defendants. In the IBM case, which came next, Judge Seeborg observed that he had written a published opinion on the proposition that reverse engineering was not required (i.e., Fusionarc, supra) and specifically stated that, while each case is "case specific," it seemed to him that being required to spend even $20,000 at that stage of the IBM patent litigation would be "excessive." In the opinion of counsel for Mr. Bender, Judge Seeborg was very close to ruling that the IBM infringement contentions and claim charts were sufficient under the circumstances of IBM being in control of additional information that is not publicly available, but counsel for Mr. Bender offered to see if there was additional information to add to them, and Judge Seeborg ruled for the plaintiff to do so on that basis. Because Jones Day was being rightfully rebuffed as to the position that nothing short of reverse engineering would do, counsel for Mr. Bender was requested thereby to agree by stipulation that additional motions to the same effect, such as in the Freescale and Maxim cases, would be withdrawn and to agree to work to provide additional information less formally, to which counsel for the plaintiff agreed. Other big law firms representing other big defendants have followed that lead, also essentially taking the position that the infringement contentions and claim charts must be at the schematic level in terms of infringement analysis, while at the same time knowing that such information is not publicly available because, with few exceptions, integrated circuit manufacturers purposefully do not publish schematics in their data sheets and their customers do not need such level of detail in order to assess their products in terms of applications. Now, Nokia seeks to strike the contentions and claim charts, again on the basis that reverse engineering is required, for that would be the only way in which to obtain schematic-level details. If this Court were to allow the use of the Local Patent Rules as a sword and not the intended shield by ruling that reverse engineering were required, basically obligating a patent plaintiff to have definitive proof of infringement prior to filing the complaint and obviating any need for related discovery, such determination would be at complete odds with the purpose, policy, and spirit of open and available discovery under the Federal Rules of Civil Procedure. As such, on appeal, that interpretation of the Local Patent Rules should be held a nullity. See O2 Micro Intern. Ltd. v. Monolithic Power Systems, 467 F.3d 1355 at 1365 (Fed. Cir. 2006) ("It is foreseeable that a local patent rule could conflict with the spirit, if not the letter, of the broad discovery regime under the Federal Rules of Civil Procedure, especially given the particular importance of discovery in complex patent cases.") See, also, Wright & Miller, Federal Practice and Procedure, Civil, Section 3153.

   Mr. Bender and others assisting him have looked for schematics in integrated circuit product manufacturers' data sheets and other information. They are exceedingly rare. One such data sheet found pertained to an Intersil Corporation product. Such schematic shows a way of practicing the elements of Claim 35. Once the Nokia schematics are produced, a similar analysis will be done. The motion should be denied.

           Respectfully submitted,

           By:_____/s/_ Greg L. Lippetz_____

           Counsel for Defendant Nokia, Inc.

           Respectfully submitted,

           By:_____/s/_ David N. Kuhn_____

           Counsel for Plaintiff Gregory Bender